AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br>Last name Unknown (LNU), "GIOVANNI"<br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)<br>)     1:19 MJ 00210 SKO<br>)<br>) |

FILED
NOV 05 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 28, 2018__ in the county of __Fresno__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 371 | Conspiracy to Commit an Offense Against the United States |
| 18 USC 1028 (a) (1) / (a)(2) | Unlawful Production/ Transfer of a Document or Authentication Feature |
| 18 USC 1546 | Fraud and Misuse of Visas, Permits, and Other Documents |

This criminal complaint is based on these facts:

See Affidavit of SA Jackie Lovato, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*
Jackie Lovato, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __November 5, 2019__

_____
*Judge's signature*

City and state: __Fresno, CA__         Sheila K. Oberto, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF COMPLAINT**

I, Jackie Lovato, being first duly sworn, do hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with the United States Department of Homeland Security, Immigration and Customs Enforcement/Homeland Security Investigations (HSI), assigned to the Office of the Resident Agent in Charge, Fresno, California since December of 2018. As part of my daily duties as an HSI agent, I investigate criminal violations in cases against persons involved in the possession, transfer, and manufacturing of fraudulent government identification documents. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program (FLETC) and the HSI Special Agent Training Program (HSI SAT). During the course of my duties, I have participated in multiple cases involving the possession, transfer, and manufacture of fraudulent government documents.

2. This Affidavit is in support of a complaint charging **"GIOVANNI"** (GIOVANNI) with violations of 18 U.S.C. §§ 371 (Conspiracy to commit an offense against the United States); 1028(a)(1) and (a)(2) (Unlawful Production and Unlawful Transfer of a Document or Authentication Feature); and 1546(a) (Fraud and Misuse of Visas, Permits, and Other Documents). I have not set forth every fact learned during the course of the investigation, nor do I request that this Court rely upon any facts not set forth herein in reviewing this application.

3. The facts set forth in this Affidavit are based on the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; physical surveillance conducted by law enforcement personnel; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience.

## II. PROBABLE CAUSE

4. In February 2018, HSI in Fresno received information from a Confidential Informant (CI)[1] that an unknown male, later identified as **GIOVANNI**, was involved in the manufacture and

---

[1] This CI has been working with HSI for approximately six (6) years. The CI was not legally in the United States

distribution of fraudulent government identification cards. A photograph of **GIOVANNI** appears at Attachment A, incorporated herein by reference, as his true identity remains unknown.

### A. First Transaction

5. On February 27, 2018, the HSI CI called the number that he/she understood **GIOVANNI** to use, (559) 854-2447, hereinafter referred to as Target Telephone Number One or TT1, to inquire about purchasing fraudulent lawful permanent resident (LPR) cards and social security (SSN) cards. An adult male, who later identified himself as **GIOVANNI**, answered the telephone and said he could provide an LPR card and social security card for $130.00 in U.S. currency. **GIOVANNI** agreed to meet the CI the following day.

6. On February 28, 2018, HSI SA Andres Varela provided the CI with photographs and fictitious biographical information for three fraudulent document sets. Agents searched the CI's person, belongings, and vehicle, and they discovered no counterfeit government identity documents or other contraband. SA Varela activated an electronic recording device and provided it to the CI to record the document buy. Agents then provided to the CI $390.00 of pre-recorded buy funds and the following fictional biographical information:

    Juan Ramirez Soto, DOB: 3/21/1968

    Pedro Ramirez Soto, DOB: 8/14/1989

    Maria Ayala-Torres, DOB: 2/18/1980; SSN: XXX-XX-3004

7. The fictional biographical information included two (2) photographs of male subjects and one (1) photograph of a female subject.

8. Agents established surveillance at the El Super parking lot in Fresno, CA, where the CI and **GIOVANNI** had agreed to meet. The two met at approximately 3:20 pm. The CI handed **GIOVANNI** an envelope, which contained the photographs and corresponding biographical information that SA Varela had previously provided to the CI. **GIOVANNI** stated that he would call his "friend" so that he could come and pick up the photographs and fictitious biographical information in order to go

---

and was given an employment authorization document by HSI. This CI has multiple arrests and misdemeanor convictions for drug possession from 1997-2001. The CI also has a felony drug possession conviction in June of 2005. HSI CI has provided information leading to multiple investigations and convictions involving drugs, fraudulent documents, and firearms.

and make the documents.

9. **GIOVANNI** asked the CI for half the money up front so that **GIOVANNI** could pay the other guy. **GIOVANNI** stated that the other guy would arrive in about fifteen (15) minutes, and it would take about an hour and a half to complete. The CI paid **GIOVANNI** $200, and **GIOVANNI** told the CI that he would call the CI once the documents were complete.

10. At approximately 3:50 pm, agents observed a gray-colored 2001 Chevrolet Silverado single cab truck bearing California license plate 32012X1 (SUBJECT VEHICLE) arrive in the parking lot. Its occupant met with **GIOVANNI**. The registered owner of the SUBJECT VEHICLE is Isaias HERRERA Ortiz at a San Bernardino, CA address.

11. Shortly thereafter, the CI received a call from **GIOVANNI** at TT1 that the documents would be ready by 5:30 pm. An HSI analyst used the License Plate Recognition software to track the SUBJECT VEHICLE to the area of Shields Avenue and N. Arthur Avenue in Fresno, CA.

12. At approximately 4:30 pm, an agent observed the SUBJECT VEHICLE parked in front of the Las Palmas apartment complex along with two vehicles registered to Herminia HERRERA – believed to be Isaias HERRERA's sister. One of these two vehicles was registered at the same San Bernardino, CA address where the SUBJECT VEHICLE was registered, while the other was registered at 212 W. Shields Ave. in Fresno, CA, i.e., Las Palmas.

13. At approximately 5:15 pm, the agent observed a Hispanic male, later identified as HERRERA, exit the apartment complex with an unknown, apparently minor female. HERRERA and the female departed in one of the vehicles registered to Herminia HERRERA. Agents followed.

14. At approximately 5:25 pm, HERRERA arrived at the El Super parking lot and met with **GIOVANNI**. The CI missed a call from **GIOVANNI**, who then texted the CI to say that "they are ready." The CI called **GIOVANNI** at TT1, at which point **GIOVANNI** told the CI to come by because it was done. HERRERA then left the parking lot.

15. At approximately 5:50 pm, the CI arrived in the El Super parking lot and met with **GIOVANNI**, who provided three sets of completed fraudulent LPR and SSN cards. The CI provided the remaining $190, for a total of $390 for all three sets.

16. SA Varela inspected the counterfeit documents, which had the following biographical information:

    Juan Ramirez Soto, DOB: 3/21/1967, SSN: XXX-XX-9452, A# XXX-XXX-482

    Pedro Ramirez Soto, DOB: 8/14/1989, SSN: XXX-XX-5842, A# XXX-XXX-207

    Maria Ayala Torres, DOB 2/18/1980, SSN: XXX-XX-3004, A# XXX-XXX-753

17. A review of DHS databases confirmed that these documents were in fact fraudulent.

**B. Second Transaction**

18. On March 28, 2018, the CI placed a monitored call to **GIOVANNI** at **TT1**. The two agreed to meet again at the El Super parking lot. Agents searched the CI's person, belongings, and vehicle, and they discovered no counterfeit government identity documents or other contraband. SA Varela activated an electronic recording device and provided it to the CI to record the document buy. Agents then provided to the CI $390.00 of pre-recorded buy funds and the following fictional biographical information with accompanying photographs:

    Ana Maria Conseco, DOB: 8/15/1987, SSN: XXX-XX-3798

    Pablo Mendez, DOB: 2/18/1980; SSN: XXX-XX-0056

    Fausto Cisneros, DOB: 7/11/1988

19. Agents established surveillance at the El Super parking lot in Fresno, CA, where the CI and **GIOVANNI** had agreed to meet. The two met at approximately 2:33 pm. The CI told **GIOVANNI** that he/she needed "three" and **GIOVANNI** asked for the photographs. The CI provided photographs and the corresponding biographical information previously provided to him/her by SA Varela. The CI gave **GIOVANNI** $200 as a down payment for the fraudulent documents.

20. **GIOVANNI** stated that the other guy – the document maker – would arrive in about ten to fifteen minutes, and that he – **GIOVANNI** – would call the CI when the documents were ready.

21. At approximately 2:39 pm, an agent observed the SUBJECT VEHICLE arrive in the El Super parking lot and identified the driver as HERRERA. A hand-to-hand transaction occurred between HERRERA and **GIOVANNI**. HERRERA walked to the SUBJECT VEHICLE, placed an unknown object in the vehicle, and returned to speak with **GIOVANNI**. Agents followed HERRERA when he

subsequently left the parking lot.

22. At approximately 3:15 pm, an agent observed the SUBJECT VEHICLE arrive at the Las Palmas apartment complex and observed HERRERA exit the vehicle. Agents were not able to determine the exact apartment that HERRERA entered or exited.

23. At approximately 4:23 pm, the CI sent a text message to **GIOVANNI** asking if the documents were ready. **GIOVANNI** told the CI that "the other guy" said the documents would be ready around 5:00 pm.

24. At approximately 4:57 pm, agents observed HERRERA exit an apartment, enter the SUBJECT VEHICLE, and depart.

25. At approximately 5:13 pm, the CI received a text message from **GIOVANNI** indicating that the documents were ready. Agents observed the SUBJECT VEHICLE arrive in the El Super parking lot. HERRERA exited the SUBJECT VEHICLE and met with **GIOVANNI**.

26. The CI called **GIOVANNI** to advise that he/she had arrived at the El Super parking lot. **GIOVANNI** approached the CI's vehicle to meet and provide the documents. **GIOVANNI** told the CI to check the order because the other guy – HERRERA – had just given it to **GIOVANNI**. The CI received three sets of counterfeit LPR and SSN cards with the fictitious biographical information and photographs previously provided. The CI gave the remaining $190 to **GIOVANNI** and **GIOVANNI** agreed in the future to lower the price to $120 per set.

27. HERRERA departed in the SUBJECT VEHICLE.

28. SA Varela inspected the documents and determined that they were in fact fraudulent. The finished documents had the following information:

    Fausto Cisneros, DOB : 7/11/1988, A# XXX-XXX-489, SSN: XXX-XX-5426

    Ana Maria Conseco, DOB: 8/15/1987, A# XXX-XXX-321, SSN: XXX-XX-3798

    Pablo Mendez, DOB: 2/18/1980, A# XXX-XXX-156, SSN: XXX-XX-0056

**C. Transaction #3**

29. The investigation was revived over one year later. On July 24, 2019 at approximately 9:49 am, the CI made a recorded telephone call to **GIOVANNI**, who now utilizes telephone number

(559) 365-5339, hereinafter referred to as Target Telephone Number 2 or **TT2**. **GIOVANNI** expressed willingness to sell the CI an additional three sets of fraudulent LPR and SSN cards for $100 per set, and the two agreed to meet at the El Super parking lot.

30. Toll records for TT2 show that between approximately 10:11 am and 10:34 am, TT2 placed four calls to telephone number (559) 776-3957, hereinafter referred to as Target Telephone 3 or TT3, which is believed to belong to HERRERA.

31. Agents searched the CI's person, belongings, and vehicle, and they discovered no counterfeit government identity documents or other contraband. Agents activated an electronic recording device and provided it to the CI to record the document buy. They provided to the CI $300.00 of pre-recorded buy funds and the following fictional biographical information with accompanying photographs:

    Valentino Martinez Garcia, DOB: 1/5/1996, SSN: XXX-XX2493

    Luis Rangel Montalvo, DOB: 2/19/1989, SSN: XXX-XX-4172

    Irma Sosa Cruz, DOB: 11/22/1973, SSN: XXX-XX-6071

32. Agents established surveillance at the El Super parking lot in Fresno, CA, where the CI and **GIOVANNI** had agreed to meet. The two met at approximately 10:24 am. **GIOVANNI** stated that he would let the CI know when the documents would be ready. The CI left and agents maintained surveillance on **GIOVANNI**.

33. At approximately 2:06 pm, the CI was notified by **GIOVANNI** that the documents would be ready by 4:00 pm and to meet at Tacos Tijuana Restaurant on Belmont Avenue in Fresno. At approximately 2:56 pm, agents observed **GIOVANNI** at Tacos Tijuana located next to MGM liquor located at 4170 E. Belmont Avenue in Fresno.

34. At approximately 3:43 pm, the CI arrived at Tacos Tijuana and spoke with **GIOVANNI**. **GIOVANNI** told the CI, "I told you 4:00 pm." **GIOVANNI** told the CI that the other guy – the document maker – would arrive shortly and was returning from Los Angeles. The CI paid the remaining money for the completed documents.

35. At approximately 3:55 pm, **GIOVANNI** told the CI that it would be "five minutes."

According to toll records for TT2, at approximately 3:55 pm, TT2 communicated with TT3 for approximately 30 seconds.

36. At approximately 4:06 pm, the SUBJECT VEHICLE arrived in the Tacos Tijuana parking lot. SA Varela identified HERRERA as the driver of the SUBJECT VEHICLE. **GIOVANNI** walked over to the SUBJECT VEHICLE and met with HERRERA. HERRERA departed the area and the CI departed shortly thereafter.

37. Surveillance was maintained on the SUBJECT VEHICLE and HERRERA met with someone in another vehicle – a red Acura – shortly after meeting with **GIOVANNI**. The meeting lasted for approximately two minutes.

38. SA Lovato examined the completed fraudulent documents delivered by HERRERA, given to **GIOVANNI** and then to the CI and noticed two of the three sets were fraudulent documents for a different customer and did not match the corresponding information previously provided to the CI by SA Lovato.

39. At approximately 4:26 pm, **GIOVANNI** placed a call to the CI, which was recorded. According to toll records for TT2, TT2 communicated with TT3 immediately before and after TT2 communicated with the CI. **GIOVANNI** told the CI to return to Tacos Tijuana because the CI had the wrong documents and his "compa" had the CI's documents.

40. The CI returned to Tacos Tijuana to meet with **GIOVANNI** in the parking lot. **GIOVANNI** was standing next to the same red ACURA that HERRERA previously met after leaving the meeting with **GIOVANNI** and the CI. The CI gave the incorrect documents back to **GIOVANNI**, received the correct documents from **GIOVANNI**, and departed the Tacos Tijuana parking lot.

41. Meanwhile, surveillance was maintained on the SUBJECT VEHICLE. At approximately 5:01 pm, an agent observed HERRERA park the SUBJECT VEHICLE on West Eden Avenue in Fresno, CA. HERRERA stepped out of the SUBJECT VEHICLE and walked into the front yard of 439 W. Eden Avenue Fresno, CA 93706 (MILL SITE), and played with a small child. Surveillance was terminated shortly thereafter.

42. The CI finally provided SA Lovato with the completed counterfeit documents, which had

the following completed biographical information:

    Valentin Martinez Garcia, DOB: 1/5/1996, SSN: XXX-XX-2493, A# XXX-XXX-128

    Luis Rangel Montalvo, DOB: 2/19/1989, SSN: XXX-XX-4172, A# XXX-XXX-012

    Irma Sosa Cruz, DOB: 11/22/1973, SSN: XXX-XX-6071, A# XXX-XXX-889

43. Upon debriefing, the CI stated that **GIOVANNI** had sent the photographs and biographical information via text message to the document manufacturer. A review of toll records for **TT2** revealed that **TT2** sent multiple MMS or picture messages to **TT3** on July 24, 2019 during the buy/walk.

44. SA Lovato inspected the purchased documents and searched the alien registration numbers on the documents through DHS indices and determined that all the alien registration numbers returned to true individuals from African countries. Upon further inspection of the documents there were several similarities:

- The same number of E84056696 was used on all SSN cards
- The same WAC number of WAC008207104 was used on all three LPR cards
- The first six numbers of the LPR cards were identical, 093-271-XXX
- All three LPR cards entry category were categorized as FX-7.
- The expiration of the LPR cards were all labeled as 3/18/2028 and the "residence since" date was 3/18/2018.

### D. Fourth Transaction

45. In September 2019, **GIOVANNI** contacted the CI to inform him/her that **GIOVANNI**'s phone number had changed to (559) 231-4252, hereinafter referred to as Target Telephone 4 or **TT4**.

46. On September 25, 2019, at approximately 8:30 am, agents were parked in the area near what was believed to be HERRERA's residence at the time – 2247 E Dayton Ave, Fresno, CA 93726. The vehicles previously identified as registered to HERRERA, including the SUBJECT VEHICLE, were parked in front of and directly across the street from the address.

47. At approximately 9:51 am, the CI placed a recorded call to **GIOVANNI** at TT4 to purchase two additional sets of fraudulent identification documents.

48. **GIOVANNI** told the CI that he was unable to meet but his "compa," later verified as HERRERA, could make the fraudulent documents and meet the CI at the El Super parking lot.

49. Agents established surveillance at the El Super parking lot. At approximately 10:14 am, the CI called **GIOVANNI** at TT4 to ask what vehicle HERRERA would be arriving in. **GIOVANNI** told the CI that HERRERA would arrive in a gray truck or a black car (HERRERA has a Black BMW with California license plate 8KDD306). **GIOVANNI** also told the CI to give **GIOVANNI** a call when the CI arrived in the El Super parking lot.

50. At approximately 10:18 am, **GIOVANNI** called the CI from TT4 and stated HERRERA would arrive in five minutes. According to precise location results for TT3, at about that time, TT3 was about eighteen (18) meters from the area of the 2247 E. Dayton Avenue residence.

51. Agents searched the CI's person, belongings, and vehicle, and they discovered no counterfeit government identity documents or other contraband. Agents activated an electronic recording device and provided it to the CI to record the document buy. They provided to the CI $200.00 of pre-recorded buy funds and the following fictional biographical information with accompanying photographs:

> Jose Garcia Guzman, DOB: 1/19/1983, SSN: XXX-XX-3294
>
> Maria Cruz Cabrera, DOB: 3/3/1989, SSN: XXX-XX-3150

52. An agent then observed HERRERA leave 2247 E. Dayton Avenue carrying a black backpack and depart in the **SUBJECT VEHICLE**.

53. At approximately 10:31 am, the SUBJECT VEHICLE entered the El Super parking lot. HERRERA stepped out and met with the CI. The CI provided HERRERA with a manila envelope carrying the information for the counterfeit documents. HERRERA asked the CI specifically about the fictitious biographical information of the female and asked "Mexicana?" The CI responded in the affirmative. HERRERA told the CI to give him an hour and a half, no more than two hours, and the documents would be ready. HERRERA also told the CI to meet at the same place at noon and left.

54. Agents maintained surveillance on the SUBJECT VEHICLE. At approximately 10:48 am, surveillance observed HERRERA driving the SUBJECT VEHICLE to the MILL SITE. HERRERA

exited the SUBJECT VEHICLE carrying the same black backpack with which he had left the Dayton Avenue address earlier that morning. HERRERA entered the MILL SITE without having to knock or ring the doorbell.

55. At approximately 11:51 am, HERRERA exited the MILL SITE in the SUBJECT VEHICLE. **GIOVANNI** called the CI and told the CI to meet at the same location (El Super) and said that he – HERRERA -- would arrive in ten minutes.

56. At approximately 12:03 pm, HERRERA arrived in the El Super parking lot in the SUBJECT VEHICLE. The CI arrived in the El Super parking lot. Shortly thereafter, **GIOVANNI** contacted the CI and stated that HERRERA had left and instructed the CI to stay and wait while HERRERA went to "deliver others" (other fraudulent documents). **GIOVANNI** also told the CI that HERRERA would return in fifteen minutes.

57. At approximately 12:47 pm, GIOVANI contacted the CI from TT4 and told the CI to meet across the street from El Super at Tacos Rapido restaurant. The CI went to the restaurant, where agents observed HERRERA to already be. GIOVANNI then called the CI and the CI notified **GIOVANNI** that he/she was at the restaurant parking lot.

58. At approximately 12:57 pm, HERRERA exited the restaurant and met with the CI. There was a hand-to-hand transaction between the CI and HERRERA. The CI gave $200 to HERRERA and HERRERA walked back inside Tacos Rapido restaurant. The CI left.

59. The CI gave SA Lovato the completed counterfeit documents, which had the following information:

Jose Garcia Guzman, DOB: 1/19/1983, SSN: XXX-XX-3294, A# XXX-XXX-948

Maria Cruz Cabrera, DOB 3/3/1989, SSN: XXX-XX-3150, A# XXX-XXX-628

60. Surveillance was maintained on the restaurant and SA Lovato walked into the restaurant. SA Lovato observed a black backpack at HERRERA's feet while HERRERA was eating at the table.

61. HERRERA later left the restaurant in the SUBJECT VEHICLE and drove directly to the MILL SITE.

62. SA Lovato inspected the purchased documents and searched the alien registration

numbers on the documents through DHS databases. Both alien registration numbers returned to naturalized citizens. Upon further inspection of the documents there were several similarities:

- The same number of E84056696 was used on all SSN cards, the same number used on the documents from the buy/walk in July of 2019
- After the date of birth and gender identifier on the back of the LPR cars, the same number (2803079MEX) was used on both LPR cards
- Both LPR card entry categories were categorized as W-16.
- The expiration of the LPR cards were both labeled as 3/7/2028 and the "residence since" date was 3/7/2018.

### E. Previous Search Warrants

63. On September 4, 2019, U.S. Magistrate Judge Erica Grosjean authorized a tracker warrant for the SUBJECT VEHICLE and authorized investigators to obtain precise location information for thirty days for **TT3** (HERRERA's suspected telephone number).

64. On September 5, 2019, investigators started receiving precise location results for **TT3** and the initial results placed the location within thirteen (13) meters of 2236 E. Dayton Avenue Fresno, CA 93726, which is directly across the street from 2247 E. Dayton Avenue.

65. On September 6, 2019, HSI agents installed the electronic tracking device on the SUBJECT VEHICLE and located the SUBJECT VEHICLE parked in front of 2247 E. Dayton Avenue Fresno, CA 93726. There was also a black BMW parked at the residence bearing California license plate 8KDD306, registered to Isaias HERRERA Ortiz at the MILL SITE address.

66. Throughout the investigation, surveillance was conducted by HSI agents on HERRERA. The SILVERADO and BMW were observed at or near 2247 E Dayton Avenue Fresno, CA 93726 and 439 W Eden Avenue Fresno, CA 93706 (MILL SITE). During surveillance, Agents were approached by local residents near Eden Avenue.

67. On October 3, 2019, U.S. Magistrate Judge McAuliffe authorized an extension of a tracker warrant for the SUBJECT VEHICLE and authorized a tracker warrant for a 2006 black BMW bearing California license plate 8KDD306 (Registered Owner: Isaias HERRERA Ortiz at 439 W Eden

Ave Fresno, CA). In addition, Judge McAuliffe authorized an extension to receive precise location results for **TT3** and authorization to receive results for **TT4**.

68. On October 4, 2019, the tracker was installed on the BMW. On October 5, 2019, electronic tracking results indicated the SUBJECT VEHICLE travelled to the area of the Ashwood Garden Apartments located at 4633 E. Shields Avenue Fresno, CA 93726 (SUBJECT PREMISES). Electronic tracking results also indicated the BMW was at the aforementioned location.

69. On October 6, 2019, electronic tracking results linked to the BMW ceased to update. On October 7, 2019, SA Lovato drove by the Ashwood Garden Apartments and observed the BMW parked at the aforementioned apartments in the resident-controlled parking lot. SA Lovato also observed the SUBJECT VEHICLE parked in the same parking lot.

70. On October 7, 2019, precise location results were received for **TT4**, however no coordinates were available. On October 8, 2019, precise notification results for **TT4** were requested to cease due to not receiving any coordinates.

71. On October 10, 2019, the electronic tracking device was removed from the SUBJECT VEHICLE after updates were no longer received. On October 16, 2019, the electronic tracker was re-installed on the SUBJECT VEHICLE at the Ashwood Garden Apartments located at 4633 E Shields Avenue Fresno, CA 93726.

72. On the same date, SA Lovato and Varela spoke with property managers and identified HERRERA by photograph as residing in apartment #112 at the Ashwood Garden apartments and recently moved into the complex. The property managers also stated that the covered parking stall is specific to each apartment. SA Lovato and Varela observed the BMW parked in stall #112.

73. On October 25, 2019, at approximately 11:40 AM, an agent observed HERRERA walk out of apartment #112 and walk to the SUBJECT VEHICLE. SA Lovato observed HERRERA then walk to the BMW parked in stall #112 and depart the area. Precise location results for **TT3**, placed the location at the Ashwood Garden apartments during this time period.

74. HERRERA was continuously followed, and HERRERA drove directly to 439 W Eden Avenue Fresno, CA 93706 (MILL SITE). At approximately 11:56 AM, HERRERA was observed

driving to the residence located at 439 W Eden Avenue Fresno, CA 93706. HERRERA exited the BMW, walked directly to the front of the residence, and opened the entrance door. Precise location results for **TT3** also placed the location at 439 W Eden Avenue Fresno, CA 93726 during this time period.

75. On October 30, 2019, the CI communicated with **GIOVANNI** utilizing **TT4**. The CI told **GIOVANNI** that he/she will contact him in a couple days for documents and **GIOVANNI** told the CI to call him and he would be ready.

### III.     CONCLUSION

76. The above facts set forth probable cause to believe that **GIOVANNI** is in violation of 18 U.S.C. §§ 371 (Conspiracy to Commit an Offense Against the United States); 1028(a)(1) and (a)(2) (Unlawful Production and Unlawful Transfer of a Document or Authentication Feature); 1546(a) (Fraud and Misuse of Visas, Permits, and Other Documents. I therefore request that the Court issue an arrest warrant for **GIOVANNI** for these violations.

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

_____
Jackie Lovato, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on: _November 5, 2019_

_____
THE HONORABLE SHIELA K OBERTO
UNITED STATES MAGISTRATE JUDGE

APPROVED AS TO FORM BY:

/s/ Laura D. Withers
LAURA D. WITHERS
Assistant United States Attorney

# ATTACHMENT A

# PHOTOS of "GIOVANNI"

The person to be arrested known as GIOVANNI and last name unknown (LNU).



